**In re Rudolf J.O. ERNST and Angelika L. Ernst, Debtors.**

**No. 04–12291 (JMP).**

United States Bankruptcy Court, S.D. New York.

April 27, 2007.

Joseph L. Fox, Esq., New York, NY, Attorney for Rudolf J.O. Ernst and Angelika L. Ernst.

Natasha P. Concepcion, Esq., Carey & Associates, LLC, New York, NY, for Michael Q. Carey and Carey & Associates LLC.

## MEMORANDUM OF DECISION GRANTING DEBTORS' MOTION FOR SUMMARY JUDGMENT AND DISALLOWING AMENDED CLAIM OF MICHAEL Q. CAREY FOR ATTORNEYS' FEES

JAMES M. PECK, Bankruptcy Judge.

### INTRODUCTION

This decision granting summary judgment to the Debtors on their claim objection and disallowing a claim by an attorney-creditor for fees incurred in collecting a bill owed by his former client relies heavily on two recent case law developments—the first in the Appellate Division of the New York State Supreme Court holding that claims such as this one are not enforceable and the second decided last month by the United States Supreme Court emphasizing the requirement that bankruptcy courts consult state law in determining the validity of most claims. Both decisions involve the same underlying

subject matter—the contractual right of an attorney to recover counsel fees from a third party. When considered together, these cases compel granting Debtors' Motion for Summary Judgment and disallowing the attorney-creditor's claim.

## PRELIMINARY STATEMENT

Debtors' Motion for Summary Judgment presents the question of whether attorneys' fees for collection claimed by a lawyer, Michael Q. Carey[1] ("Carey"), under a provision in his prepetition retainer agreement with the Debtors, should be disallowed under the authority of a recent opinion of the New York State Supreme Court, Appellate Division, First Department[2] declaring that the provision in question is unenforceable and no longer judicially sanctioned within the First Department. That opinion, *Ween v. Dow*, 35 A.D.3d 58, 822 N.Y.S.2d 257 (App. Div. 1st Dep't 2006), found that fees associated with the collection of unpaid legal fees were not recoverable by an attorney from his client as a matter of public policy unless the applicable retainer agreement also gave the client the right to recover attorneys' fees. The Motion for Summary Judgment

filed by the Debtors relies upon the holding in *Ween* and argues that Carey's claim for fees in this case must be disallowed under 11 U.S.C. § 502(b)(1) because the claim arises under a retainer agreement that includes the very same offending provision that was found to be unenforceable in *Ween*.[3]

*Ween* was decided almost one year after the District Court decision in *Carey v. Ernst*, 333 B.R. 666 (S.D.N.Y.2005) that partially reversed an earlier ruling by Bankruptcy Judge Blackshear disallowing Carey's claim and remanded the dispute to this Court for an evidentiary hearing.[4] There is no disagreement that *Ween* involved a retainer agreement containing language that is identical to the agreement at issue in this case and there is no dispute regarding the meaning of the decision. The decision expressly holds such unilateral retainer agreements to be unenforceable with respect to collection fees in cases between attorneys and their clients in the First Department.

The question remains, however, whether the holding in *Ween* supports the conclusion that the claim for collection fees

---

1. The claim is filed by Carey doing business as Carey & Associates LLC.

2. There are four Appellate Divisions of the New York Supreme Court, one in each of the State's four Judicial Departments. These Courts resolve appeals from judgments or orders of the courts of original jurisdiction and intermediate appellate courts; the Appellate Division for the First Department has appellate jurisdiction over cases originating in Bronx County and New York County.

3. At a pre-hearing conference, the Debtors asked for and were granted permission to file a Motion for Summary Judgment to disallow the claim for collection fees based on the *Ween* case as the most current expression of applicable New York law. Following briefing in accordance with an agreed schedule, the parties argued the Motion for Summary Judgment on March 15, 2007.

4. District Judge Patterson affirmed in part and remanded in part a ruling of Judge Blackshear, *In re Ernst*, No. 04–12291 (Bankr.S.D.N.Y. February 22, 2005), finding that Judge Blackshear's disallowance of the fee application was not supported by the record and that an evidentiary hearing was required to determine what fees and disbursements, if any, should be allowed, as contemplated by 11 U.S.C. § 502(b). Despite the direction from the District Court to conduct an evidentiary hearing, this Court, relying on *Ween*, concludes that such a hearing is not now required and that the questions presented properly are resolved as a matter of law by summary judgment. The District Court opinion should be consulted for additional background information regarding this dispute.

against the Debtors should be disallowed when analyzed under the language of 11 U.S.C. § 502(b)(1). Of particular interest is the issue of timing and whether the bankruptcy court should consider as applicable law a subsequent material development in case law affecting the enforceability of a contract provision that becomes manifest between the petition date and the date when the bankruptcy court considers whether to allow or disallow the claim.

Carey argues that *Ween* does not apply here because the right to recover attorneys' fees from the Debtors for collection was recognized prepetition in state court litigation between the parties, and *Ween* is not authoritative, final precedent because the Appellate Division remanded certain aspects of the case to the trial court for further findings.[5] In sum, he argues that this Court should not rely on *Ween* to disallow his claim under § 502(b)(1) because of the procedural postures of both this case and the *Ween* case.

Despite these arguments, this Court finds that *Ween* is a definitive and forceful ruling that a unilateral right to collection fees in a retainer agreement is not enforceable in New York County as a matter of public policy. Unless and until this judge-made rule is modified or reversed, the holding in *Ween* is applicable state law for purposes of a determination that is being made currently as to the validity of Carey's claim.[6] Given *Ween's* direct relevance to the issue to be decided in this case and the compelling justification to disallow Carey's claim as a matter of law, any disputes relating to the reasonable value of services for collection are not material to the outcome and do not need to be resolved prior to granting judgment for the Debtors.

The holding in *Ween* effectively nullifies the ability of any Bronx or New York County attorney, including Carey, to recover costs of collection from a client unless the retainer agreement includes a reciprocal right to payment in the client's favor. Because the retainer agreement in question was made and performed within the First Department, *Ween* is applicable law within the meaning of 11 U.S.C. § 502(b)(1) authorizing this Court to find that Carey's claim for collection fees is unenforceable against the Debtors and their property. Therefore, Carey's claim is disallowed to the extent that it includes collection fees, together with related amounts for interest and disbursements. The procedural background and reasons for this decision are set forth below in greater detail.

## DISCUSSION

### Procedural Background

The Motion for Summary Judgment seeking disallowance of Carey's claim is the latest procedural twist in a prolonged fight over legal fees between Carey and his former client Rudolf J.O. Ernst ("Ernst"). Carey is a New York County attorney who performed legal services for Ernst during the period from December 1997 through July 1998 relating to a bail application and contested extradition proceeding in the United States District Court for the Southern District of New York.

---

5. Following briefing and argument, the open issues in *Ween* were settled.

6. Timing has played an important part in the outcome of this claim dispute. If an evidentiary hearing regarding the amount of Carey's claim had taken place in this Court before *Ween* was decided, there would have been no impediment to recovery under state law. The change in the law simply has trumped the Carey claim. Moreover, even if this decision had not come down when it did, the bankruptcy court always had the power to review and disallow the Carey claim, in whole or in part. *See* discussion of the First Disallowance Opinion beginning on page 7 of this decision.

Ernst and his wife Angelika Ernst are chapter 13 debtors (the "Debtors") who commenced this chapter 13 case on April 5, 2004. The material facts are undisputed.

Debtors signed a retainer agreement with Carey dated January 5, 1998 (the "Retainer Agreement") providing, among other things, that Carey was entitled to charge the Debtors interest on unpaid fees (starting thirty days after the billing date) at 12% annually and recover amounts charged for any collection efforts relating to unpaid fees.[7] At the termination of Carey's representation, the Debtors had paid $154,765.64 of a total outstanding bill for services of $227,039, leaving an unpaid balance of $72,274.14.

On August 13, 1998, Carey, acting as his own counsel, commenced a collection action against the Debtors in the New York State Supreme Court, New York County (the "State Court Action"). In the State Court Action, Carey sought recovery of the unpaid balance of his legal fees, all interest accrued under the Retainer Agreement, and all fees and disbursements in connection with his attempted collection of the fees on theories of breach of contract, account stated and *quantum meruit*.[8] Carey ran up significant incremental fees[9] in pursuing the State Court Action in efforts that spanned almost six years.

Eventually, Carey succeeded in obtaining a judgment against the Debtors in the State Court Action. Justice Leland DeGrasse entered a decision and order dated March 19, 2004 that, among other things, awarded judgment to Carey for the unpaid balance of his legal fees ($72,274.14) plus interest from July 31, 1998 (the "State Court Decision"). *Carey & Assoc. v. Ernst, et al.,* No. 604000/98 (N.Y. Sup.Ct. filed March 26, 2004). However, the State Court Decision left open the ultimate determination of the amount of collection fees, ordering that, "Plaintiff's [Carey's] claim for collection costs recoverable under the agreement is severed for an assessment of damages which shall be conducted on the scheduled trial date." State Court Decision at page 4.[10]

Shortly after entry of the State Court Decision, the Debtors filed their Chapter 13 petition. Carey filed a proof of claim, asserting a right to payment based on the

7. The Retainer Agreement is annexed to the Affidavit of Mr. Ernst in Support of the Debtors' Motion for Summary Judgment (the "Ernst Affidavit") as Exhibit B.

8. Carey also sought to impose liability on the Debtors' son based on a theory of an unwritten personal guarantee. This cause of action was dismissed in the State Court Action.

9. The amended fee application filed by Carey & Associates on October 16, 2006 asserts a claim for collection fees in the aggregate amount of $189,078.50 plus interest and disbursements. This decision deals exclusively with the legal question of whether Carey's claimed collection costs are allowable under the *Ween* decision and does not address whether these claimed fees are fair, reasonable or otherwise allowable. When simply looking at the numbers, however, the fees claimed by Carey for collection are significant in relation to the unpaid principal balance of $72,274.14 for the work performed on the extradition itself and might not have been so high if Carey did not have the Retainer Agreement to lean on allowing him to seek reimbursement from the Debtors. Carey contends in a letter addressed to the Court that the high fees in relation to the principal balance are the product of his having to defend groundless counterclaims brought against him by the Debtors, but it is unnecessary for the Court to decide the reason that the fees accumulated to this level. It is sufficient to note that the fees for collection are disproportionate in relation to the balance of unpaid fees and that a rational litigant without recourse to a potential source of repayment ordinarily would not spend more to collect a debt than the amount at issue.

10. The State Court Decision is annexed to the Ernst Affidavit as Exhibit D.

State Court Decision and related collection fees on July 27, 2004. The Debtors objected to Carey's claim on September 27, 2004 contending, among other things, that it was inequitable for an attorney to represent himself in collection efforts.

Also in July, Carey filed a motion with this Court seeking relief from the automatic stay to pursue liquidation of his claim for collection fees in the New York State Supreme Court. Judge Blackshear denied this motion on December 9, 2004. In the order denying stay relief, Judge Blackshear directed Carey to submit a fee application for the amount of all legal fees sought under Carey's proof of claim. Carey filed his fee application on December 17, 2004 and the Debtors objected to the fee application less than a month later.

On February 22, 2005, Judge Blackshear issued a combined opinion on the Debtors' claim objection and Carey's fee application. *In re Ernst*, No. 04–12291 (Bankr.S.D.N.Y. February 22, 2005, Docket # 50) (the "First Disallowance Opinion"). The First Disallowance Opinion found that this Court has exclusive jurisdiction over the claims allowance process, is not precluded from fixing the amount of Carey's claim by the State Court Decision and has the power to decide the extent to which the State Court Decision is enforceable against the Debtors' estates, which included the amount of appropriate interest to be allowed as part of the claim. The First Disallowance Opinion, at pages 6–7 (citations omitted).

Judge Blackshear further found that the bankruptcy court was the proper forum to determine the amount of collection fees to be included in the claim because the claim for collection fees, while rooted in state law, still needed to be "reasonable" under section 502(b) to be allowed. *Id.* at page 9. Accordingly, Judge Blackshear denied Carey's fee application and granted the Debtors' objection to the extent of the claims for collection fees and postpetition

interest and attorneys' fees but allowed Carey's claim in the amount of the State Court Decision with interest fixed at 9% instead of the contract rate of 12%. On March 3, 2005, Carey appealed.

On November 8, 2005, District Court Judge Patterson upheld the First Disallowance Opinion to the extent that it reduced the interest rate chargeable as part of Carey's claim but reversed the disallowance of Carey's collection fees without a hearing and remanded only that one portion of Judge Blackshear's opinion for a further determination. *Carey v. Ernst*, 333 B.R. 666, 679 (S.D.N.Y.2005). Judge Patterson found that although the bankruptcy court had the power to determine the amount of the claim that would be allowed against the Debtors' estates and that a hearing was not a requirement in all cases, the record did not support the disallowance of Carey's attorneys' fees relating to his collection efforts without an evidentiary hearing. Notably, the District Court left undisturbed all other aspects of the First Disallowance Opinion, including the determination by Judge Blackshear that this Court has the power to decide the extent to which the State Court Decision is enforceable against the Debtors' estates.

■ Almost one year later, a unanimous panel of the Appellate Division, First Department (the "Appellate Division") ruled in *Ween v. Dow, supra*. The crux of the *Ween* holding is that a provision in a retainer agreement allowing an attorney to recover attorneys' fees and costs for collection actions, without a reciprocal provision allowing the client to recover attorney's fees and costs in defending against such an action, is unenforceable as a matter of public policy. *Id.* This is precisely the same provision that is contained in the Retainer Agreement. If the decision in *Ween* is found applicable to the Carey claim, and if as a consequence Carey is

unable to recover collection fees from the Debtors, there is no need for the Court to conduct an evidentiary hearing, and the Debtors are entitled to judgment on their claim objection as a matter of law.

Oral argument on the Motion for Summary Judgment took place on March 15, 2007. During that argument, Carey's counsel requested leave to file a supplemental brief responding to certain cases mentioned during the Debtors' argument. Before filing that supplemental brief, however, Carey delivered to the Court a lengthy letter dated March 30, 2007, indirectly rearguing the Motion for Summary Judgment and requesting a pre-hearing conference in connection with certain motions that Carey intends to file in the Debtors' chapter 13 case.

Because this letter was delivered after the close of the argument and raises a variety of points that are extraneous to the legal issue before the Court, the Court has not considered the substance of this letter in its deliberations.[11] None of the relief requested in Carey's letter is relevant to the pending Motion for Summary Judgment. Whatever may have been the motivation for submitting this letter, it is not countenanced by the Federal Rules of Bankruptcy Procedure or the Local Rules of this Court.

On April 13, 2007, Carey filed a twenty-page supplemental brief that reiterates and seeks to clarify his opposition to the Motion for Summary Judgment. The extra briefing serves mostly as a vehicle to argue again the same points that had been covered adequately in the original briefing and in oral argument. In response to this submission, Debtors' counsel wrote a letter dated April 24, 2007, informing the Court of certain developments at the trial court level in *Ween v. Dow*, challenging certain contentions made by Carey and requesting leave to submit a supplemental brief for the Debtors. Carey responded on April 25, 2007. Given the Court's analysis of the issues, further briefing is not warranted.

### The Holding in Ween v. Dow and its Application to Carey's Claim

The decision in *Ween* has broad application to the enforceability of retainer agreements that do not afford the prevailing party the right to collect legal fees. In his opinion, Justice Nardelli of the Appellate Division delivers a strong and unmistakably clear message to members of the New York bar. Recognizing the special relationship of trust that exists between attorney and client,[12] Justice Nardelli criticizes as unfair a provision in a retainer agreement that permits an attorney to recover counsel fees that does not also include a reciprocal provision for allowance of attorneys' fees to the client should the client prevail.

The Court declares that the very nature of such a one-sided right to collection fees is fundamentally unfair and unreasonable because of the potential for silencing a client's complaint for fear of retaliation for nonpayment of fees that may in fact be unreasonable. Accordingly, the Appellate Division has found that such a unilateral

---

**11.** Among other things, the letter asks for permission to file three motions: a motion seeking to strike certain comments from the record made at the conclusion of oral argument, a motion for relief from the automatic stay so that Carey can pursue further proceedings in the State Court Action and a motion to stay distributions to creditors. The letter also presents information regarding settlement discussions between the parties that the Court considers inappropriate, particularly when a matter is *sub judice*, and that ordinarily is not admissible in evidence.

**12.** The opinion quotes from Sir Francis Bacon who, in commenting upon the essence of the attorney-client relationship, stated that "[t]he greatest Trust, between Man and Man, is the Trust of Giving Counsel ..." *Ween v. Dow*, 35 A.D.3d at 62, 822 N.Y.S.2d 257.

provision for the recovery of collection fees in a retainer agreement is not entitled to judicial sanction and, therefore, is unenforceable.

This is the same retainer provision that underlies Carey's claim for collection fees against the Debtors. Despite the Appellate Division's repudiation of the contractual basis for that claim, Carey argues that the obviously pertinent holding in *Ween* should not lead to a finding that his claim is unenforceable under applicable law for purposes of this Court's analysis under 11 U.S.C. § 502(b)(1). Carey contends that this precedent should be disregarded and cannot be applied at this stage of the bankruptcy case to defeat Carey's claims. Carey's arguments are unpersuasive.

*Ween is applicable law in the First Department*

Carey tries to minimize the devastating impact of the *Ween* decision to allowance of his claim by arguing that the case is not yet the last word on whether retainer provisions such as the one underlying his claim are unenforceable under New York law. He has raised the possibility that further proceedings in the litigation may lead to a different result. This argument is without merit for two reasons.

First, while certain aspects of the *Ween* case were unresolved at the time of briefing and argument, these open issues had nothing to do with the enforceability of the collection fee provision. Nonetheless, in his papers and at oral argument, Carey questioned the finality of the decision in *Ween* because the remand to the trial court included the possibility of additional appeals. As a consequence of recent events, this theoretical risk to the finality of *Ween* no longer exists. The litigants in that case reached a settlement of all remaining issues on April 11, 2007 before the scheduled trial date. As a result, no further appeals are possible at this point, and *Ween v. Dow*, without question, is an authoritative decision of the Appellate Division that may not be appealed to the New York State Court of Appeals. It is the law that applies to all retainer agreements for lawyers who practice in Manhattan and the Bronx.

▌ Second, even if an appeal were pending in the Court of Appeals, this Court still could look to the *Ween* case as a cogent and well considered opinion by an intermediate state court as to the enforceability of the very same retainer provision that is at issue in this case. In finding that this provision is fundamentally unfair and should not be judicially sanctioned, the Appellate Division has made a public policy pronouncement and has provided a strong indication of how New York's highest court would decide the same issue. In the absence of a decision by the New York Court of Appeals, this Court is satisfied that it can look to this decision of the Appellate Division as authoritative applicable state law that mandates disallowance of the Carey claim.[13]

*Although Ween was not decided until after the petition date, the holding in Ween is applicable law within the meaning of § 502(b)(1)*

Carey contends that Justice DeGrasse's prepetition State Court Decision awarding him legal fees for handling the extradition case represents a finding of liability for collection fees that must be respected despite subsequent developments in New York case law. Carey makes what is essentially a timing argument—the *Ween*

---

**13.** In situations when a federal court is sitting in diversity and applying state law, intermediate state court rulings are controlling unless there is a strong indication that the state's highest court would decide the issue differently. *See C.I.R. v. Bosch's Estate,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

holding, according to Carey, cannot be used by the Debtors now to undo a final earlier decision of the State Supreme Court that implicitly determined that the collection provision of the retainer agreement was enforceable against the Debtors.

Under § 502(b)(1), it is for this Court, once an objection has been made to allowance, to determine the amount of such claim as of the petition date (in this case April 5, 2004), *except to the extent that the claim is unenforceable under applicable law.* Relevant excerpts from this Bankruptcy Code section are as follows:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> > (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . .

11 U.S.C. § 502(b)(1).

The plain meaning of the language is that the Court shall determine the *amount* of the claim as of the date of the filing of the petition. The section provides no "point in time" reference, however, with respect to disallowing a claim and offers no guidance as to what constitutes "applicable law" or when the bankruptcy court should deem such law to be applicable for purposes of disallowing a claim.

Thus, the question is framed. An intermediate state appellate court issues an indisputably pertinent case, directly on point, invalidating the underlying legal basis for Carey's recovery, but that opinion does not become law until well after the date of filing of the petition. Carey argues

that this Court is not bound to follow such newly articulated state law as it has evolved and exists today but rather should follow the law as it existed on the petition date, including the State Court Decision of Justice DeGrasse that the Court assumes held that Carey prevailed with respect to the right to recover collection fees.

The Court has been able to locate only one bankruptcy court decision that addresses the subject of timing. *In re Parker*, 308 B.R. 129, 132 (Bankr.D.Conn. 2004). This case states what it describes as the "general understanding" that the term applicable law means the law that existed on the petition date, but does not reference any other authority for this broadly stated proposition. This statement is not persuasive because there appears to be no support within the actual text of § 502(b)(1) for limiting the term applicable law to mean only relevant nonbankruptcy law that was in effect on the petition date.

Moreover, the *Parker* decision actually supports the view that events arising after the petition date may lead to disallowance of a claim, and the case is otherwise distinguishable because it did not involve a change in applicable law after the petition date. In *Parker*, a claim that would have been enforceable on the petition date was rendered unenforceable postpetition as a consequence of the confirmation of the debtor's plan. *See* 11 U.S.C. § 1327(a). Despite *Parker's* comment on the timing for determining whether a claim is unenforceable, the bankruptcy court in *Parker* disallowed this claim under § 502(b)(1) holding that "the language [of 502(b)(1)] is certainly broad enough to encompass a claim . . . which has been rendered unenforceable by operation of law during the pendency of a bankruptcy case." *In re Parker*, 308 B.R. at 132.

■ In determining whether to allow or disallow a claim under this section of the Bankruptcy Code, the bankruptcy court needs to recognize and utilize applicable state law, not ignore it. It would be unreasonable to interpret this section of the Bankruptcy Code in the manner urged by Carey; the term "applicable law" must be interpreted as the controlling precedent regarding the enforceability of a contract that is applicable at the time that the Court is called upon to make its judgment whether to allow or disallow a particular claim. No language in the section leads to a different interpretation.

What constitutes applicable law necessarily is a fluid concept, and it is to be expected that state law will evolve over time on a case-by-case basis. Lawyers are charged with the responsibility to do their ethical best within the bounds of the law when advancing theories in good faith to change existing law,[14] and some change is inevitable, albeit on a timetable that is unpredictable. This familiar process of case law development is at the core of a dynamic adversarial system. Thus, applicable law, as that term is used in § 502(b)(1), by its very nature is not a static concept, and so it is understandable that there is no language within this subsection that ties disallowance of an unenforceable claim to the petition date or that limits the determination of applicable law to such law that was subsisting and in effect as of the petition date.

This broad approach contrasts with the more restrictive language of §§ 502(e), (f), (g), (h) and (i). These subsections prescribe language calling for certain kinds of claims to be allowed or *disallowed* as if such claims had arisen before the date of filing of the petition. The language used demonstrates that Congress knew how to be specific in providing an effective date for disallowing claims in a variety of other subsections of § 502 (including newly enacted § 502(g)(2)) but has not included any such effective date within § 502(b)(1). The fact that the subsection says nothing about any benchmark date for determining unenforceability of a claim supports the view that the bankruptcy court has broad discretion in applying the law under this subsection.

This result is especially clear in the case of Carey's claim. This Court should not ignore a development in the case law that has annulled the contractual basis for the claim by declaring the retainer agreement provision to be fundamentally unfair and unenforceable. The bankruptcy court must have the discretion to determine what the applicable law is with respect to a claim as of the only date that makes any rational sense—the date on which the court is assessing whether the claim is enforceable against the Debtors. Any other reading of the text would lead to the inequitable result of allowing a claim in bankruptcy that, on grounds of public policy, is no longer enforceable in the state courts of New York.

It is reasonable to predict that any trial court judge in New York County or any New York appellate court judge today would follow the precedent in *Ween* and would rule that Carey is not entitled to recover any amount from the Debtors for collection fees. Although the *Ween* decision would not automatically constitute grounds for vacating the State Court Decision if Carey were granted relief from the automatic stay to pursue his claim in state court, *Wohl v. Avon Electrical Supplies,*

14. Ethical consideration 7–4 of the Lawyer's Code of Professional Responsibility provides, in part: "The lawyer's conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a good faith argument for an extension, modification or reversal of the law."

*Inc.,* 55 N.Y.S.2d 252, 255 (Sup.Ct.1945) ("The subsequent modification or reversal of an authority relied upon in making a determination in another case is no ground for vacating such determination."), the state court would have to determine whether to apply the *Ween* decision upon consideration of three factors: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application. *People v. Favor,* 82 N.Y.2d 254, 262, 604 N.Y.S.2d 494, 624 N.E.2d 631 (1993) (internal citations omitted).

■ The Appellate Division has delivered a loud and clear message. Lack of mutuality in any attorney's retainer agreement is fatal to recovery. Because the contract provision underlying Carey's claim for collection fees under the Retainer Agreement has been found to be "fundamentally unfair and unreasonable," *Ween v. Dow,* 35 A.D.3d at 63, 822 N.Y.S.2d 257, this Court has no doubt that the state court would determine that these three factors weigh decidedly in favor of retroactively applying the *Ween* decision. Accordingly, this Court believes that Carey would not prevail even if he were to seek an assessment of damages against the Debtors in state court because his claim is no longer enforceable under state law. Looking to applicable state law in this manner to disallow Carey's claim is fully consistent with the principle of deference to state law recently explained by the United States Supreme Court.

Following oral argument in this case, on March 20, 2007, the United States Supreme Court decided *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* —— U.S. ——, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). There the Supreme Court overruled the Court of Appeals for the Ninth Circuit and held unanimously that there was no textual support in the Bankruptcy Code for disallowing a contractual claim for attorneys' fees under § 502(b)(1) merely because those fees were incurred while litigating in a bankruptcy case. The Supreme Court reviewed the text of this Bankruptcy Code section, found no basis in the statutory language for finding that such fees were not recoverable in bankruptcy and reaffirmed the well settled proposition that state law has a central role in determining property rights in bankruptcy. The decision highlights the important interaction between the Bankruptcy Code and applicable state law, particularly with respect to the allowance or disallowance of claims. Under the regime of claim allowance, a claim should be allowed unless it is disallowed pursuant to § 502(b).

In commenting on § 502(b)(1), the Supreme Court noted that this section is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. Thus, it is entirely appropriate for this Court to look to the holding in *Ween* to assess whether the retainer agreement that purports to obligate a former client to pay for costs of collection is enforceable under the law of the state where that contract was made and performed.

■ State law governs the substance of claims in bankruptcy. Property interests are created and defined by state law and unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently in a bankruptcy proceeding. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). For purposes of the objection to Carey's claim, this means that assessing the enforceability of Carey's retainer agreement under state law is critical to the analysis under § 502(b)(1).

Carey, as the prevailing litigant in the prepetition litigation against the Debtors, has the right to be compensated for his attorneys' fees only to the extent that he had an enforceable contract under New York law entitling him to recover legal fees, notwithstanding the general rule against shifting the costs of litigation to an adversary (the so-called American Rule) in which the prevailing party in a litigation ordinarily is not entitled to recover attorneys' fees from the loser. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

The Court in *Ween* declared emphatically that an identical retainer provision to the one used by Carey was unenforceable; in effect, the provision was intended to contractually reverse the American Rule for the sole benefit of the lawyer and to the potential detriment of the client. As such, the Appellate Division has recognized that this term of a retainer agreement, as a matter of public policy, is not binding and legally enforceable—and hence the provision was never a fair one and should never have been enforceable by an attorney against his or her client.

When viewed from this perspective, regardless of the postpetition timing of the *Ween* decision and the status of the State Court Decision severing Carey's collection fee claim for an assessment of damages,[15] Carey is not entitled under currently appli-cable New York law as interpreted in *Ween* to collect attorneys' fees from Ernst in a New York State court or in this Court, because the agreement regarding payment of those fees never included the essential reciprocity to make the provision enforceable.

*Res judicata is inapplicable to disallowance of Carey's claim*

Carey's argument goes beyond pointing out that the *Ween* case should not be applied retroactively. He contends that the State Court Decision is a final judgment regarding his entitlement to collection fees and that, under principles of *res judicata,* it is not permissible to litigate the same issues again in this Court.

 The decretal language that Carey cites for this proposition is a single sentence in the State Court Decision. This sentence directs an assessment of damages regarding the claim for collection fees, but the language is ambiguous and does not explicitly find liability or enter a judgment against Ernst for collection fees.[16] The Court, however, will assume for purposes of this decision, even though the sentence is subject to differing interpretations, that Justice DeGrasse has made a finding that the Debtors are liable for collection fees.[17]

The fact that the state court may have determined liability prior to assessing damages establishes nothing more than a right to payment in an unliquidated

---

**15.** The parties expended considerable effort arguing about the finality of the State Court Decision. For the reasons noted in this opinion, even if final, that precedent does not impact disallowance of the Carey claim.

**16.** The sentence reads: "Plaintiff's claim for collection costs recoverable under the agreement is severed for an assessment of damages which shall be conducted on the scheduled trial date."

**17.** The state court also denied a claim by Ernst that he should be entitled under the

retainer agreement to recover his own collection fees against Carey. This is an indication that the court paid close attention to the provision relating to collection fees and that Ernst sought to benefit from the language and did not otherwise challenge the validity of the provision. Although the state court does not analyze the enforceability of the provision, the severing of the claim for an assessment of damages appears to be predicated on the premise that the collection fee provision is enforceable.

amount and does not limit this Court's power to determine the allowed amount of the collection fee claim or to disallow the claim in its entirety. This Court would still be charged with determining the extent to which that claim is allowable as against the Debtors and their property even if the state court had conducted a hearing and had assessed damages in respect of Carey's claim for collection fees. *See In re United States Lines, Inc.,* 199 B.R. 476, 482 (Bankr.S.D.N.Y.1996).

This distinction between prepetition litigation and postpetition claim allowance is already the "law of the case" in this matter—and Carey's *res judicata* argument has failed once before. Judge Blackshear previously found, in the First Disallowance Opinion (citing *United States Lines, Inc.*), that the bankruptcy court has exclusive jurisdiction to determine the allowed amount of Carey's claim regardless of a prior judgment in the State Court. First Disallowance Opinion at 6–7. Because the bankruptcy court is the only forum that is competent to determine whether Carey's claim is allowable, the doctrine of *res judicata* does not apply. The question of whether a claim against the Debtors' estates should be allowed or disallowed is purely a creature of bankruptcy law and by its nature is not an issue that is capable of being raised in state court litigation. Accordingly, whether to allow Carey's claim is not being litigated again in this Court. *Id.* The District Court specifically agreed with this point. *Carey v. Ernst,* 333 B.R. at 673.

Judge Blackshear found that *res judicata* was not a bar to reducing the rate of interest on Carey's claim, and the very same reasoning applies when considering disallowance of the collection fee portion of the claim. The prepetition State Court Decision, even if deemed to be unambiguous and final, does not prevent the bankruptcy court from disallowing the claim.

Simply put, no doctrine of issue preclusion relating to a state court judgment, particularly one that at most only determined liability, can properly constrain the discretion of the Court to allow or disallow claims against the Debtors. Claim allowance is uniquely part of the bankruptcy process and was not and could not have been litigated previously in the state court. *Carey v. Ernst,* 333 B.R. at 673–74; First Disallowance Opinion at pages 6–7.

### CONCLUSION

Given the principles set forth in *Travelers* relating to the essential role of state law in the bankruptcy court's determination of whether to allow or disallow a particular claim, this Court has concluded that the *Ween* case is applicable law as that term is used in § 502(b)(1) of the Bankruptcy Code and that the Carey claim for attorneys' fees is not an enforceable claim against the Debtors or their property and, as a consequence, must be and hereby is disallowed.

IT IS SO ORDERED.